UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

COREY, M.[1],

                                                                                      Plaintiff,        19-CV-756-FPG
            v.                                                                                        DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                                                                     Defendant.
_____

**INTRODUCTION**

On October 24, 2017, Plaintiff filed an application for supplemental security income ("SSI") and disability insurance benefits ("DIB") alleging disability beginning on October 1, 2016. Tr.[2] at 89, 194-98. Three months later, on January 26, 2018, he filed an application for child's disability insurance benefits based on disability. Tr. 190-93. After the applications were initially denied, Plaintiff timely requested a hearing. Tr. 129. On January 11, 2019, he appeared with his attorney, Kelly Laga, and testified before Administrative Law Judge Stephen Cordovani ("the ALJ"). Tr. 35-77. A Vocational Expert ("VE"), Joseph Atkinson, also testified at the hearing. Tr. 77-86. The ALJ issued an unfavorable decision on January 30, 2019. Tr. 13-25. Plaintiff then requested review by the Appeals Council, which the Council denied on April 11, 2019, making the ALJ's decision the final decision of the Commissioner. Tr. 1-5. Subsequently, Plaintiff brought this action pursuant to Titles II and XVI of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner which denied his applications.[3] ECF No. 1.

---

[1] In accordance with the Standing Order dated November 18, 2020, regarding the identification of non-government parties in Social Security opinions, available at http://www.nywd.courts.gov/standing-orders-and-district-plans, Plaintiff is identified by his first name and last initial.

[2] "Tr." refers to the administrative record in the matter. ECF No. 9.

[3] The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

1

Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 12, 15. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is DENIED, the Commissioner's motion is GRANTED, and the Commissioner's decision is AFFIRMED.

## LEGAL STANDARD

### I. District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b).[4] If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or

---

[4] Because the DIB and SSI regulations mirror each other, the Court only cites the SSI regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.20(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

**DISCUSSION**

**I.     The ALJ's Decision**

The ALJ analyzed Plaintiff's claims for benefits using the process described above and determined that Plaintiff had not attained age twenty-two as of October 1, 2016, the alleged onset date, but met the insured status requirements of the SSA through September 30, 2020. Tr. 15-16. At Step One of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 15. At Step Two, the ALJ found that Plaintiff suffered from several severe impairments: major depressive disorder, antisocial personality disorder, and borderline intellectual functioning. *Id*. He also found that Plaintiff's obesity was a non-severe impairment. *Id*. At Step Three of the analysis, the ALJ found that the severity of Plaintiff's impairments did not meet or equal the criteria of any Listing of impairments. Tr. 16-18. The ALJ then determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels with several non-exertional limitations. Tr. 19. Specifically, the ALJ determined that Plaintiff could understand, remember, and carry out simple instructions and tasks; perform jobs with GED ratings for reasoning at Level Two or lower, and for math and language at Level One, and that any work instructions would be provided to Plaintiff by demonstration and/or simple commands. *Id*. The ALJ further determined that Plaintiff could have occasional interaction with supervisors, co-workers, and the public, minimal changes in work routine and processes, receive supervisory reminders 1-2 times per day, and should not perform work that would involve supervisory duties, independent decision making, unfamiliar travel, strict production quotas, tandem, or teamwork. *Id*. At Step Four of the sequential analysis, the ALJ found that there was no past relevant work that Plaintiff could perform. Tr. 23. The ALJ then proceeded to Step Five, where he concluded that there were jobs available in significant numbers in the national economy

that a person of Plaintiff's age, education, and work experience could perform. Tr. 27. Specifically, the ALJ found that Plaintiff could work as a laundry worker II, kitchen helper, dishwasher, and marker II. Tr. 24.

**II.     Analysis**

Plaintiff advances several arguments in support of his motion. First, he argues that the ALJ erred in Step Three of the sequential analysis when he failed to find that the level of Plaintiff's intellectual functioning satisfied the requirements of Listing 12.05. ECF No. 12-1 at 8-16. Plaintiff also argues that the ALJ failed to properly evaluate medical opinions of his treating sources and formulate his non-exertional limitations in accordance with the evidence contained in the record. ECF No. 12-1 at 16-23. For the reasons that follow, the Court does not find Plaintiff's arguments persuasive.

    1.     <u>Step Three Error</u>

Listing 12.05 applies to an intellectual disorder that is characterized by significantly subaverage general intellectual functioning, significant deficits in current adaptive functioning, and manifestation of the disorder that began prior to age 22. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (effective March 14, 2018). Once a claimant makes the threshold showing of having an intellectual disorder, he then must demonstrate the required level of severity for this disorder under paragraphs (A), (B), (C), or (D) to be found disabled under the Listing. *See Burnette v. Colvin*, 564 F. App'x 605, 607 (2d Cir. 2014) (internal citations omitted). Plaintiff here argues that his impairment satisfies Listing 12.05B.

In order to satisfy the requirements of Listing 12.05B, Plaintiff must demonstrate:

>    1. Significantly subaverage general intellectual functioning evidenced by a or b:
>       a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>       b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; *and*
>    2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>       a. Understand, remember, or apply information (see 12.00E1); or
>       b. Interact with others (see 12.00E2); or
>       c. Concentrate, persist, or maintain pace (see 12.00E3); or
>       d. Adapt or manage oneself (see 12.00E4); *and*
>    3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05B (emphasis added).

The parties do not appear to dispute that the record contains a number of IQ scores obtained from 2009 to 2018 that ranged from 67 to 76, and a composite memory index score of 74, all of which could satisfy the IQ requirement of paragraph (1) of the Listing.[5]  ECF Nos. 12-1 at 9, 15-1 at 8.  What they mainly disagree about is whether Plaintiff suffered from significant deficits in adaptive functioning that would satisfy the requirements of paragraph (2) of the Listing.  Plaintiff argues that because the ALJ had already found him having marked limitations in the concentrating, persisting, or maintaining pace domain (Listing 12.05B(2)(c)), he should have also found Plaintiff to be markedly, as opposed to moderately, limited in either the understanding, remembering, or

---

[5] Plaintiff argues that the ALJ failed to evaluate his IQ scores at Step Three and, instead, simply recited the language of the Listing. ECF No. 12-1 at 11. This argument is not persuasive because although the ALJ could have been more specific in his Step Three analysis, his discussion of Plaintiff's IQ scores in the other parts of his decision, as well as his comprehensive evaluation of Plaintiff's deficits in the four areas of mental functioning, support his conclusion that Plaintiff's impairments did not meet the requirements of Listing 12.05B. *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d Cir. 2010) ("[T]he absence of an express rationale for an ALJ's conclusions does not prevent us from upholding them so long as we are 'able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.'" (internal citations omitted)).

applying information, or the adapting or managing oneself domains to satisfy the Listing. ECF No. 12-1 at 13.

Generally, the term "adaptive functioning" refers to an individual's progress in acquiring mental, academic, social, and personal stills, as compared with the other unimpaired individuals of his age, and his ability to cope with the challenges of ordinary everyday life. *See Simmons v. Colvin*, No. 15-CV-6143, 2016 WL 3866620, at *2 (W.D.N.Y. July 13, 2016) (internal citations omitted). When evaluating a claimant's adaptive functioning, the ALJ may consider such factors as "communicating and socializing with others, living on one's own, paying bills, caring for children, shopping, cooking, cleaning, driving[,] and other activities of daily life." *Sprague v. Comm'r of Soc. Sec.*, No. 1:18-CV-666-DB, 2019 WL 4059004, at *4 (W.D.N.Y. Aug. 27, 2019); *see also Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) (internal citations and quotations omitted).

Based on the record before the Court, the ALJ reasonably determined that Plaintiff had moderate limitations in the three out of the four domains of paragraph 2 of Listing 12.05B.[6] Specifically, with respect to the understanding, remembering, or applying information domain that refers to the abilities to learn, recall, and use information to perform work activities, the ALJ properly analyzed Plaintiff's memory skills and abilities to perform daily tasks and multi-step activities, all of which demonstrated that he had moderate, *i.e.*, fairly limited, as opposed to marked, *i.e.*, seriously limited, abilities in this domain. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(F)(2). Specifically, the record demonstrates that even though Plaintiff tested below average

---

[6] The ALJ has found Plaintiff to be markedly limited in the concentrating, persisting, or maintaining pace domain (Tr. 18).

in many cognitive, intellectual, and academic abilities, and his lowest full-scale IQ score was 67,[7] his neuropsychologist Dr. Santa Maria opined that Plaintiff's true intellectual abilities were higher than below average, and were in the borderline intellectual functioning range. Tr. 440-46. Notably, Dr. Santa Maria indicated that there were no cognitive or psychological contraindication to Plaintiff handling part-time or full-time competitive entry level employment without strong demands for writing, readings, or mathematics. Tr. 445. Additionally, during visits with his treatment providers, Plaintiff was always able to identify his symptoms, and discuss history of mental health treatment, family dynamics, his legal, or housing issues in an intelligent, adequate, and coherent manner. Tr. 382-84, 393-94, 399-02, 411, 416, 418, 426-27, 438-46. His memory was intact, thought process was organized, and his insight and judgment were adequate, cooperative, and fair during the examinations. *Id.* Plaintiff was punctual in attending appointments, especially after his housing issues were resolved, was able to navigate public transportation on his own, travelled 20 miles by bus to attend an appointment with the consultative examiner, requested a bus pass from his medical providers, and navigated various forms of housing assistance provided by social services to eventually obtain stable housing for himself after having been homeless for 11 months. Tr. 38, 45. At the hearing, Plaintiff testified that he lived alone, used laundry facilities, made a shopping list, and followed a budget when he went shopping. Tr. 39-40, 47, 48, 62. After graduating high school with an IEP diploma, Plaintiff worked at a number of jobs, primarily doing sweeping, dishwashing, organizing, and moping. He had a driver's permit, used smart phone, and was hoping to take courses to get into college. Tr. 47-52, 70-71. He also

---

[7] Because Dr. Santa Maria determined that Plaintiff's WAIS-4 full scale IQ score was 67, which was at first percentile, he initially considered a diagnosis of intellectual disability, mild/mild mental retardation. Tr. 444. However, based on his impression of Plaintiff's overall intellectual abilities, he opined that Plaintiff's true intellectual abilities were higher and was in the range of borderline intellectual functioning. Tr. 444-45.

testified about playing chess and videogames on the computer, reading history books, watching TV, and going to places like the library, bus station, and soup kitchens on a regular basis. Tr. 45, 55-56, 74-75. He did basic cleaning and cooking, and testified that when he lived with his father, he also performed many other household duties. Tr. 73, 384. As for his ability to use public transportation, Plaintiff stated that he could read bus schedules after having been shown that initially and was comfortable asking for help with directions at the bus terminal if he needed it. Tr. 56, 72. Therefore, the ALJ correctly determined that Plaintiff was moderately limited in the understanding, remembering, and applying information domain. *See Sprague*, 2019 WL 4059004, at *6 (plaintiff was mildly, as opposed to markedly limited in the understanding, remembering and applying information domain when he had essentially normal mental status examinations, attended doctor's appointments, cooked, prepared meals, read, and wrote poetry); *Gross v. Comm'r of Soc. Sec.,* No. 1:16-CV-0723 (CFH), 2017 WL 2574015, at *6 (N.D.N.Y. June 14, 2017) (plaintiff's being able to cook, clean, grocery shop with his mother, take public transportation independently, graduate high school with IEP diploma, live alone, and socialize with friends demonstrated that he did not have the deficits in adaptive functioning to demonstrate that he was medically disabled as a result of his intellectual disability).

Similarly, the Court does not find reasons to disturb the ALJ's determination of Plaintiff's moderate limitations in the domain of interacting with others, which refers to the ability to relate with supervisors, co-workers, and the public, and in the adapting, or managing oneself domain, which determines the ability to regulate emotion, control behavior, and maintain well-being in a work setting. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E (2) and (4). Even though Plaintiff did not have any relationship with his family, the record demonstrates that he was able to establish positive rapport with his mental health providers and two case managers. Tr. 411. He was

employed in various capacities since graduating from high school, socialized with several friends, had appropriate appearance, grooming, and eye contact at his medical appointments, and was involved in various daily activities discussed above that involved Plaintiff dealing with the public. Tr. 384, 393, 401, 440. *See, e.g.*, *Sprague*, 2019 WL 4059004, at *6 (plaintiff was no more than moderately limited in the interacting with others and adapting and managing himself categories when he socialized with friends, had appropriate grooming and hygiene, engaged in normal daily activities, cleaned, took the bus, shopped); *Burnette*, 564 F. App'x at 608 (even though plaintiff needed help with cooking, cleaning, and laundry on some occasions, her ability to live alone, obtain a driver's license, take public transportation, shop for food, and pay bills did not demonstrate that she suffered from deficits in adoptive functioning for purposes of Listing 12.05B); *Talavera*, 697 F.3d at 154 (plaintiff had adequate adaptive functioning because she was able to navigate public transportation without assistance, engage in productive social relationships, and manage her own personal finances, use computers, display fluent speech, coherent and goal-directed thought processes, and appropriate affect). Therefore, the Court concurs with the ALJ and finds that the record does not support Plaintiff's position that his deficits in adaptive functioning were more than moderate. As such, Plaintiff cannot demonstrate that he was medically disabled as a result of his intellectual disability under Listing 12.05B. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

    2.    <u>The ALJ's RFC Determination</u>

Plaintiff also argues that the ALJ erred in rejecting portions of the opinion of his mental health provider Dr. Conant, who opined that Plaintiff was limited in performing several-step tasks.

ECF No. 12-1 at 16. Plaintiff submits that this error was particularly harmful because of the VE's testimony that limiting Plaintiff to performing one- to two-step tasks would essentially reduce him to performing simple production work, which, if coupled with the hypothetical limitations identified by the ALJ, would eliminate any jobs available to Plaintiff. *Id*. at 19.

Plaintiff's argument stems from a one-sentence note provided by Dr. Conant in his June 7, 2018 evaluation, in which he indicated that Plaintiff "reports an ability to follow simple instructions[,] but he has limited ability to retain multiple items in sequence, *e.g.*[,] several steps in the instructions." Tr. 394. The ALJ found this portion of Dr. Conant's opinion to be only "somewhat persuasive" because it was based on Plaintiff's self-reported limitation rather than the doctor's own opinion, and because it was inconsistent with Plaintiff's abilities to play chess and video games, and travel by bus—skills that require greater abilities than identified by Plaintiff. Tr. 22-23. Plaintiff takes issue with such evaluation arguing that these reasons to discount Dr. Conant's statement were not valid. ECF No. 12-1 at 17. Notably, aside from this portion, the ALJ found the rest of Dr. Conant's opinion to be consistent with the other opinion evidence contained in the record and the record overall. Tr. 22. The Court finds that the ALJ properly evaluated Dr. Conant's opinion in accordance with the newly enacted standard for evaluation of a medical opinion when he found that the portion of the opinion related to Plaintiff's limitations in performing multistep tasks was unsupported by objective evidence contained in the record. *See* 20 C.F.R. § 416.920c. Because the regulations specifically instruct an ALJ to consider supportability and consistency of a medical opinion as part of the more general persuasiveness analysis, and to articulate how persuasive the ALJ finds the medical opinion to be, the ALJ here did exactly what the regulations instructed him to do. *See* 20 C.F.R. § 416.920c(b)(2) (Because "[t]he factors of supportability and consistency are the most important factors we consider when

we determine how persuasive we find a medical source's medical opinions . . . to be . . . we will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision."); *see also HILDA MARGARITA ACOSTA CUEVAS v. COMM'R*, No. 20-CV-0502(AJN)(KHP), 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021) ("[S]upportability is an inquiry geared toward assessing how well a medical source supported and explained their opinion(s). As for consistency, the new rules provide that the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes."). The ALJ examined Dr. Conant's medical source statement from the perspective of how much explanation Dr. Conant's own findings supported his opinion about Plaintiff's memory and understanding, and how consistent his opinion was with the entire record. It is obvious that Dr. Conant's findings that Plaintiff had limitations in the understanding and memory domain was not based on his objective evaluation of Plaintiff, but, as Dr. Conant clearly stated, was based on Plaintiff's own recitation of his limited abilities.

Plaintiff's casting doubt on the ALJ's evaluation of Dr. Conant's opinion that Plaintiff was unable to perform multiple steps tasks is nothing more than a far-fetched attempt to argue that the ALJ should have followed the VE, who testified that there would be no jobs available to a claimant with limitations similar to Plaintiff's, who is limited to work involving one- to two-step instructions. Indeed, the VE testified that limiting an individual to performing one- to two-step tasks would reduce his General Educational Development (GED) reasoning to Level One[8] and, thus, limit the individual to simple production work involving quotas or production-rate pace,

---

[8] The Dictionary of Occupational Titles (DOT) provides for several GED levels that relate to aspects of education required for satisfactory job performance. *See DOT*, *App'x C,* 1991 WL 688702 (Jan. 1, 2016). The GED scale consists of three divisions: reasoning development, mathematical development, and language development. *Id.* A GED reasoning Level One provides that an individual would be able to "[a]pply commonsense[sic] understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.*

which would preclude any employment based on the ALJ's hypothetical. Tr. 86. However, the ALJ limited Plaintiff to simple work that can be performed at GED reasoning Level Two or lower. Tr. 19. The DOT identifies that GED reasoning Level Two includes work where an individual would "[a]pply commonsense [sic] understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *See DOT, App'x C,* 1991 WL 688702 (Jan. 1, 2016). Unlike the GED reasoning Level One, Level Two does not refer to simple one- or two-step instructions.

In support of his argument Plaintiff relies on the opinion of neuropsychologist Dr. Santa Maria, who opined that Plaintiff could be employed "in entry-level work roles without strong demands on reading, writing[,] or mathematics[,] and with work demands of a relatively routine and repetitive nature without strong demands on novel problem solving." Tr. 445. Plaintiff argues that "entry level" and "routine and repetitive" jobs mentioned by Dr. Santa Maria correspond to jobs with a GED reasoning Level One and include simple production work (ECF No. 12-1 at 19), however, this argument is not convincing because it disregards the well-established precedent of this Circuit that has held that "jobs with DOT reasoning levels of two . . . are compatible with limitations to simple, routine work." *Haiss v. Berryhill*, No. 17CV8083 (VB)(LMS), 2019 WL 3738624, at *11 (S.D.N.Y. May 15, 2019), *adopted sub nom.*, No. 17 CV 8083 (VB), 2019 WL 5690712 (S.D.N.Y. Nov. 4, 2019) (collecting cases); *see also McGriff v. Colvin*, No. 3:16-CV-911 (JAM), 2017 WL 3142336, at *3 (D. Conn. July 25, 2017) (discussion regarding the difference between an RFC limitation to "one-to-two-step tasks" and an RFC limitation to "short, simple instructions"); *Cross v. Astrue*, No. 08-CV-0425 (VEB), 2009 WL 3790177, *8 (N.D.N.Y. Nov. 12, 2009) (ALJ's determination that plaintiff's work must be simple, low-stress, and entry level, with no complex decision-making, no planning, scheduling or report-writing, no multi-tasking,

with little change in the work environment, and infrequent interaction with the public or co-workers was consistent with jobs identified with a GED Level of Two or Three). The ALJ had no basis to limit Plaintiff's ability to perform multiple tasks because neither Dr. Santa Maria, nor any other Plaintiff's treatment provider, limited him to work involving one- or two-step instructions that would translate to Plaintiff's GED reasoning level of One.

Plaintiff also attacks the RFC finding arguing that the ALJ did not base his determination that Plaintiff needed one to two supervisory reminders per day on any medical opinion, and had the RFC provided for additional reminders, there would have been no jobs available for Plaintiff to perform. ECF No. 12-1 at 20-23. This argument is similarly unpersuasive because it has been well-recognized that the RFC determination does not have to mirror any medical opinion contained in the record. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("[T]he ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision."). Moreover, it has been recognized that when analyzing the record as a whole, the ALJ does not have to rely on one particular opinion, and may formulate an RFC without the benefit of a medical opinion. *See, e.g.*, *Monroe v. Comm'r of Soc. Sec*, 676 F. App'x 5, 9 (2d Cir. 2017) (summary order) (the ALJ properly discounted a medical source opinion based on, among other things, the inconsistency of the physician's opinion with his treatment notes, and relied on treatment notes and activities of daily living to formulate the RFC); *Tankisi v. Comm'r Soc. Sec*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (where "the record contains sufficient evidence from which an ALJ can assess . . . residual functional capacity," a medical source statement or formal medical opinion is not necessarily required); *Pellam*, 508 F. App'x at 90 (2d Cir. 2013) (upholding the ALJ's RFC determination where he "rejected" physician's opinion but relied on physician's findings and treatment notes).

Even though Plaintiff testified that he needs regular reminders during the day, the objective findings and testing performed by his mental health providers demonstrated that he did not have significant problems with concentration, motivation, or memory (Tr. 338, 341, 440, 442-44), was compliant with medications (Tr. 345-46, 429), had good attention and concentration (Tr. 394, 429), and had no issues with attendance and punctuality (Tr. 394).  Additionally, Dr. Santa Maria indicated that Plaintiff's memory functioning was in the normal range, and even though his testing demonstrated Plaintiff's weakness in the attention and processing speed areas, Dr. Santa Maria opined that it is Plaintiff's overall below average cognitive abilities and depression, instead of a longstanding deficit in the ability to focus, that contribute to his weakness in attention.  Tr. 445. Although Dr. Santa Maria identified Plaintiff's general intellectual and other cognitive abilities to be in the borderline range, he did not opine that Plaintiff needed regular reminders at work, let alone more than the one to two reminders identified in the RFC, as Plaintiff argues.  The only suggestion that Dr. Santa Maria made was for Plaintiff to have loose oversight or supervision with some of his more demanding household activities such as general financial and medication management. Tr. 446. Considering such findings, as well as Plaintiff's testimony about the nature and extent of assistance he received from his two case managers, it was reasonable for the ALJ to provide for Plaintiff receiving one to two supervisory reminders per day when he formulated his RFC.

In sum, because Plaintiff has presented no medical evidence of functional limitations greater than those found by the ALJ, Plaintiff has failed to meet his burden to demonstrate that he had a more restrictive RFC than found by the ALJ.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (plaintiff failed his duty to prove a more restrictive RFC). Therefore, the RFC determination is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 12) is DENIED, and the Commissioner's motion for judgment on the pleadings (ECF No. 15) is GRANTED. The Commissioner's decision is AFFIRMED. The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: February 9, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court